[Cite as *In re T.H.*, 2020-Ohio-3571.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

T.H.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. W. Scott Gwin, J.
Hon. Craig R. Baldwin, J.

Case No. 20CA000003

O P I N IO N

CHARACTER OF PROCEEDINGS:     Appeal from the Guernsey County Court
of Common Pleas, Juvenile Division,
Case No. 18JC00136

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     June 30, 2020

APPEARANCES:

For Christopher Daugherty

JEANETTE MOLL
P.O. Box 461
Zanesville, Ohio  43702

For Guernsey County Children Services

MELISSA M. WILSON
274 Highland Avenue
Cambridge, Ohio  43725

For Brian Hardy

LINDSEY DONEHUE ANGLER
217 N. 8th Street
Cambridge, Ohio  43725

For CASA

MARGARET BOYD LaPLANTE
139 W. 8th Street
Cambridge, Ohio  43725

*Hoffman, P.J.*

{¶1} Appellant Christina Hoskins ("Mother") appeals the January 17, 2020 Journal Entry entered by the Guernsey County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges, and responsibilities with respect to her minor child ("the Child"), and granted permanent custody of the Child to appellee Guernsey County Children Services ("GCCS").

## STATEMENT OF THE FACTS AND CASE

{¶2} Mother and Brian Hardy, Jr. ("Father") are the biological parents of the Child. On April 3, 3018, the trial court placed the Child in the emergency temporary custody of GCCS after Mother was arrested during a drug raid. The Child was with Mother at the time. Father was incarcerated throughout the majority of the case. GCCS filed a complaint on April 4, 2018, alleging the Child was a dependent, neglected, and abused.

{¶3} At a hearing on April 4, 2018, the trial court found there was probable cause to believe the Child was a dependent child, and ordered the Child continue in the temporary custody of GCCS. The trial court ordered Court Appointed Special Advocate ("CASA") Cheryl Gadd to serve as guardian ad litem ("GAL") for the Child. At an adjudicatory hearing on June 11, 2018, Mother admitted the Child was dependent, and the trial court so found. The trial court conducted a dispositional hearing and case plan hearing on June 28, 2018, and maintained the status quo.

{¶4} The GAL filed a report on September 25, 2018. Therein, the GAL noted Mother continued to test positive for THC. Mother was living with a friend, who had an open case with GCCS, despite GCCS expressing concerns regarding the arrangement. Mother reported she attends group counseling at Life Springs Recovery in Columbus, Ohio, as she is a recovering meth addict, and is prescribed Suboxone. Mother's

paramour had displayed aggression toward GCCS workers on multiple occasions. In addition, court staff had to escort Mother's paramour out of the court house during the dispositional hearing. Mother was evasive when asked if her paramour was violent with her. The GAL recommended the Child remain in the temporary custody of GCCS and visitation remain supervised at GCCS. The GAL also indicated her belief Mother would benefit from attending mental health counseling at a local facility.

{¶5} The GAL filed updated reports on February 1, April 30, and July 26, 2019. Mother continued to test positive for THC. Although Mother had indicated she was getting a medical marijuana card, she had yet to do so. Mother failed to complete a mental health assessment. GCCS could not confirm whether Mother had stable housing. Mother attended Life Springs, and later Muskingum Valley Heath Center ("MVHC"), for drug treatment and to maintain her prescription for Suboxone. Mother was living with her paramour, and the GAL recommended he participate in counseling to address his anger issues.

{¶6} The trial court conducted review hearings on November 20, 2018, February 7, and May 3, 2019, and maintained the status quo each time. At the May 3, 2019 review hearing, the trial court granted GCCS's request for a six month extension to give Mother additional time to provide clean drug screens and to complete her mental health assessment and follow recommendations. The trial court conducted a review hearing on July 27, 2019, and again maintained the status quo.

{¶7} GCCS filed a motion for permanent custody on September 13, 2019. The trial court conducted a hearing on the motion of January 9, 2020.

{¶8} Stacy Yakupcak, the ongoing GCCS caseworker assigned to the family, testified Mother had prior involvement with GCCS relative to her other two children due to concerns of Mother's drug use, her being incarcerated, and the family's homelessness. Mother no longer had custody of those children. Yakupcak explained GCCS took custody of the Child on April 3, 2018, after Mother was arrested during a drug raid. The Child was with Mother at the time.

{¶9} Ykupcak detailed the requirements of Mother's case plan. Mother was required to complete a mental health assessment and follow all recommendations. Mother completed a mental health assessment at MVHC in September, 2019. Mother was diagnosed with bipolar affective disorder and a history of substance abuse, in remission. Mother was prescribed medication, but stopped taking the prescriptions because she did not care for how the medications made her feel. Mother was also involved in a Soboxone program at MVHC.

{¶10} The case plan also required Mother to complete a drug and alcohol assessment and follow all recommendations, as well as comply with random drug screens. Mother attended counseling every two weeks at MVHC. Mother consistently tested positive for THC. Out of a total of 47 screens, Mother had zero negative screens. Yakupcak had multiple conversations with Mother about her marijuana use. Mother acknowledged she needed to stop and informed Yakupcak she was trying. Yakupcak and Mother discussed Mother obtaining a medical marijuana card, but Mother never pursued the option. Mother told Yakupcak she used marijuana to deal with anxiety and stress.

{¶11} In addition, Mother was required to obtain and maintain stable housing, and maintain sufficient economic resources to care for the Child and meet his basic needs. Yakupcak testified housing was an ongoing issue. Mother had safe and appropriate housing for a period of ten months, between November, 2018, and August, 2019. During the remaining time, Mother was homeless and staying with friends and family. In the spring of 2019, Mother worked on weekends at a warehouse in Sugarcreek. Mother commenced employment at Quality Inn in April, 2019. Between September, and December, 2019, Mother worked for Packaging Materials. Mother was unemployed at the time of the hearing. Mother did not have any form of income when she was not working.

{¶12} The Child was 44 months old, and had been in the custody of GCCS for 21 months. Yakupcak testified it would be difficult for Mother to have the type of bond a mother should have with a child of the Child's age due to the length of time the Child had been in GCCS custody. Yakupcak had not observed any behavior changes in Mother during her involvement with GCCS. Yakupcak did not believe Mother could be reunified with the Child within a reasonable time, noting Mother continued to test positive for THC even after the filing of the motion for permanent custody. The Child had been in the custody of GCCS for 465 days.

{¶13} GCCS explored 10 kinship options for the placement of the Child. These options were either not appropriate or not interested in placement.

{¶14} Cheryl Gadd, CASA and GAL, testified she believed granting permanent custody to GCCS was in the Child's best interest. Gadd explained Mother continued to use marijuana despite conversations during which she was advised reunification would

not occur if she continued to use marijuana. Mother repeatedly stated she intended to get a medical marijuana card, but never did so. Mother remained in an abusive relationship with her paramour. Gadd did not think reunification was possible even if Mother was given additional time to work on her case plan.

**{¶15}** Via Journal Entry filed January 17, 2020, the trial court terminated Mother's parental rights, privileges, and responsibilities with respect to the Child and granted permanent custody of the Child to GCCS. The trial court found the Child could not and should not be placed with Mother, and it was in the Child's best interest to grant permanent custody to GCCS.

**{¶16}** It is from this journal entry Mother appeals, raising the following assignments of error:

I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

II. THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILD SHOULD NOT BE PLACED WITH APPELLANT AND THAT IT WAS IN THE MINOR CHILD'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF GUERNSEY COUNTY CHILDREN'S SERVICES.

**{¶17}** This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I, II

**{¶18}** We elect to address Mother's first and second assignments of error together. In her first assignment of error, Mother contends the trial court erred in finding it was in the Child's best interest to grant permanent custody to GCCS. In her second assignment of error, Mother challenges the trial court's finding the Child could not be placed with her within a reasonable time or should not be placed with her.

**{¶19}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶20}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶21}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant

permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶22} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶23} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶24}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶25}** As set forth in our statement of the facts and case, supra, Mother failed to complete her case plan. Mother continued to use marijuana despite being advised reunification could not occur if she continued to do so. Mother completed 47 out of 47 random drug screens; she tested positive for THC each time. Mother testified she uses marijuana to make her feel numb and not think or feel. Mother is a self-admitted former "meth addict". Mother was diagnosed with bipolar affective disorder and a history of substance abuse, in remission. She was prescribe medication, but stopped taking the medications due to how the prescriptions made her feel. Mother attended counseling to address her mental health and drug addiction issues.

**{¶26}** Mother failed to obtain and maintain stable housing and employment. At the time of the hearing, Mother was residing with her own mother, Freddie Hoskins. Hoskins' long-term, live-in boyfriend had previously been incarcerated for a violent crime. Prior to living moving into Hoskins' home on December 27, 2019, Mother lived with her abusive paramour.

**{¶27}** Based upon the foregoing, we find the trial court's finding it was in the best interest of the Child to grant permanent custody to GCCS is not against the manifest

weight of the evidence. We further find the trial court's finding the Child could not be placed with Mother within a reasonable period of time or should not be placed with her is not against the manifest weight of the evidence.

{¶28} Mother's first and second assignments of error are overruled.

{¶29} The judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.


By: Hoffman, P.J.

Gwin, J. and

Baldwin, J. concur