[Cite as *In re A.J.*, 2014-Ohio-2734.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | **No. 13AP-864** |
| A.J., | : | (C.P.C. No. 06JU-16180) |
| (R.J., | : | **(REGULAR CALENDAR)** |
| Appellant). | : | |
| In the Matter of: | : | **No. 13AP-865** |
| C.D., | : | (C.P.C. No. 06JU-16179) |
| (R.J., | : | **(REGULAR CALENDAR)** |
| Appellant). | : | |

---

## D E C I S I O N

### Rendered on June 24, 2014

---

*Marcy A. Vonderwell*, for appellee A.J.

*Robert J. McClaren* and *Nickolas Walstra*, for appellee Franklin County Children Services.

*William T. Cramer*, for appellant.

---

**APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch**

KLATT, J.

{¶ 1} In these two cases, appellant, R.J., the mother of A.J. and C.D., appeals from judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and placing the children in

the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm those judgments.

## I. Factual and Procedural Background

{¶ 2} Mother has four children, two of whom are involved in these appeals. Those children are C.D., now age 12, and A.J., now age 8. FCCS began its involvement with this family in March 2005 due to allegations of educational neglect of another child, D.J. While that case was pending, FCCS removed all of mother's children due to allegations that mother physically abused D.J. As a result, on January 29, 2007, the children were adjudicated dependent and placed in the temporary custody of FCCS. The children have been in foster care since that date. A case plan was prepared and approved for mother to eventually reunite with her kids. The plan addressed a number of FCCS's concerns, including mother's parenting skills, the need for psychological and anger counseling, and her ability to meet the basic needs of her children.

{¶ 3} In November 2008, FCCS filed for permanent custody of the children. After a number of continuances and a mistrial, a trial on the motion finally took place over multiple days between September 2012 and July 2013. During the trial, the trial court dismissed the case regarding D.J. and returned her to mother. After the hearing, however, the trial court granted FCCS's motion and awarded FCCS permanent custody of A.J. and C.D.

## II. The Appeal

{¶ 4} Mother appeals and assigns the following errors:

> [1.] The juvenile court violated Due Process, R.C. 2151.353(F), and *In re Young Children* by failing to return the children after mother sufficiently mitigated the original problem that led to the grant of temporary custody.

> [2.] The juvenile court's conclusion that termination of parental rights was in the best interest of the children was not supported by clear and convincing evidence.

### A. Mother's First Assignment of Error—Did the Trial Court Violate R.C.2151.353(F)?

{¶ 5} Mother argues in this assignment of error that the trial court could not consider FCCS's untimely motion for permanent custody because FCCS's award of

temporary custody had terminated due to its failure to comply with R.C. 2151.353(F). Therefore, mother argues the trial court could only return the children to her. We disagree.

### 1. Timeline

{¶ 6}  To address mother's argument, we have to first set forth the timeline of this case.  FCCS filed complaints alleging that mother's children were dependent on October 30, 2006.  After the trial court adjudicated the children dependent, it awarded FCCS temporary custody of the kids on January 29, 2007.  On October 29, 2007, the trial court extended the temporary custody for six months until April 28, 2008.  On that date, the trial court granted FCCS another six-month extension of its temporary custody until October 28, 2008.[1]

{¶ 7}  On September 10, 2008, FCCS filed a motion, pursuant to R.C. 2151.353(E)(2) and 2151.415(A)(2), seeking to end its temporary custody of the children and to obtain an order for protective supervision.  On November 17, 2008, FCCS then filed a motion seeking an award of permanent custody of the children pursuant to R.C. 2151.413 and 2151.414.

### 2. Analysis

{¶ 8}  R.C. 2151.353(F) provides that an order of temporary custody "shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section."

{¶ 9}  Pursuant to R.C. 2151.415(A):

> [A] public children services agency * * * that has been given temporary custody of a child pursuant to section 2151.353 of the Revised Code, not later than thirty days prior to the earlier of the date for the termination of the custody order pursuant to division (F) of section 2151.353 of the Revised Code or the date set at the dispositional hearing for the hearing to be held pursuant to this section, shall file a motion with the court that issued the order of disposition requesting

---

[1] Temporary custody could not be extended beyond these two six-month extensions.  R.C. 2151.415(D)(4).

any of the following orders of disposition of the child be issued by the court:

(1) An order that the child be returned home and the custody of the child's parents, guardian, or custodian without any restrictions;

(2) An order for protective supervision;

(3) An order that the child be placed in the legal custody of a relative or other interested individual;

(4) An order permanently terminating the parental rights of the child's parents;

(5) An order that the child be placed in a planned permanent living arrangement;

(6) In accordance with division (D) of this section, an order for the extension of temporary custody.

{¶ 10} Mother claims that FCCS's temporary custody ended because FCCS did not timely file a motion listed in R.C. 2151.415(A). Therefore, mother argues that the trial court was required to terminate temporary custody and return her children to her. We disagree. The Supreme Court of Ohio has held that temporary custody is terminated upon the passing of this "sunset date" when no motion pursuant to R.C. 2151.415(A) is filed. *In re Young Children*, 76 Ohio St.3d 632, 637 (1996). The passing of that date does not, however, divest the juvenile court of jurisdiction. *Id.* In such a case, the juvenile court must determine whether the problems that led to the original grant of temporary custody had been resolved or sufficiently mitigated as of the sunset date when the temporary custody order would have otherwise terminated. If these problems have been resolved or mitigated, the court should terminate the temporary custody order and release the children to their mother. *Id.* at 639. If not, and if it is in the best interest of the children to remain in such custody, the case may continue. *In re A.W.*, 4th Dist. No. 07CA14, 2008-Ohio-718, ¶ 8.

{¶ 11} The holding in *In re Young* does not apply here because FCCS timely filed a motion pursuant to R.C. 2151.415(A) before the "sunset date" of the temporary orders passed. After two extensions of FCCS's temporary custody, pursuant to R.C. 2151.415(D),

the award of temporary custody was set to expire on October 28, 2008. However, on September 10, 2008, more than 30 days before that date, FCCS filed a motion to terminate temporary custody and to obtain an order of protective supervision. That motion is one of the specifically enumerated motions in R.C. 2151.415(A) that continues the FCCS's order of temporary custody until a disposition is made.

{¶ 12} Mother argues that temporary custody had terminated because the agency's motion for permanent custody was untimely filed. Her argument focuses on the wrong motion because it is the agency's motion for termination of temporary custody and an award of protective supervision that extended the award of temporary custody. R.C. 2151.415(A)(2). That motion was timely filed more than 30 days before the order of temporary custody was to expire and, therefore, continued the order of temporary custody.

{¶ 13} Because FCCS timely filed its motion for termination of temporary custody and an award of protective supervision, temporary custody was continued pending disposition of the motion. Accordingly, the trial court could consider the motion for permanent custody and did not need to address whether the problems that led to the original grant of temporary custody had been resolved or sufficiently mitigated. We overrule mother's first assignment of error.

## B. Mother's Second Assignment of Error—The Best Interest of the Children

{¶ 14} In this assignment of error, mother disputes the evidentiary basis for the decision to terminate her parental rights. At the outset, we note that parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio has recognized the essential and basic rights of a parent to raise his or her child. *In re Murray*, 52 Ohio St. 3d 155, 157 (1990). These rights, however, are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Thus, in certain circumstances, the state may terminate the parental rights of natural parents when it is in the best interest of the child. *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00CA2694 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th

Dist.1994). However, because of the importance of those rights, parents must receive every procedural and substantive protection the law permits before they may be terminated. *In re K.J.D.*, 10th Dist. No. 12AP-652, 2013-Ohio-610, ¶ 7.

### 1. The Law

{¶ 15} A decision to award permanent custody requires the trial court to take a two-step approach. First, a trial court must determine whether any of the circumstances in R.C. 2151.414(B)(1) apply. Mother concedes that her children were in the temporary custody of one or more public children service agencies or private child placing agencies for 12 or more months of a consecutive 22-month period, satisfying R.C. 2151.414(B)(1)(d).

{¶ 16} Once the trial court finds that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) apply, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). FCCS must prove by clear and convincing evidence that an award of permanent custody is in the child's best interest. *Id.*; *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 16. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. *In re A.P.*, 10th Dist. No. 08AP-186, 2009-Ohio-438, ¶ 9, citing *In re Abram*, 10th Dist. No. 04AP-220, 2004-Ohio-5435.

{¶ 17} In determining the best interest of a child, a trial court is required to consider all relevant factors including, but not limited to, the following:

> (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D).

{¶ 18} This court's review of a decision finding that permanent custody is in a child's best interest is limited to determining whether there is competent, credible evidence to support that determination. *In re Bray*, 10th Dist. No. 04AP-842, 2005-Ohio-1540, ¶ 12; *In re G.B.*, 10th Dist. No. 04AP-1024, 2005-Ohio-3141, ¶ 19.

### 2. Analysis

{¶ 19} The trial court considered all of the above factors and concluded that an award of permanent custody was in the best interest of the children. Specifically, the trial court found that the children had no bonds with their fathers or with each other and that no other relatives were involved with the children; that because of their age and their experiences with mother, the children were ambivalent as to their wishes; that the children have been in foster care since October 30, 2006; and that the children's need for a legally secure placement can only be achieved with a grant of permanent custody to FCCS because mother is unable to provide for her children.[2]

{¶ 20} Mother's arguments in this assignment of error are really disagreements with the trial court's conclusions. She contends that she maintained strong bonds with both children and that they maintained strong bonds with each other. She argues that although the children's wishes were "somewhat unclear," it is clear that neither wanted to sever the family bonds. She argues that an award of permanent custody to FCCS is worse for the children because neither of the current foster care parents wants to be adoptive homes for the children. Thus, mother argues, an award of custody to FCCS only guarantees movement of the children from foster home to foster home until they can find

---

[2] To the extent the trial court also found mother to have committed an act that would have fit under R.C. 2151.414(E)(7), we agree with mother that such a finding is not supported by the evidence. Thus, we will not consider that finding in our review of the trial court's determination.

a suitable home. She also contends that she is a capable mother who proved that she can financially provide an adequate environment for her children.

{¶ 21} Despite mother's arguments, the record reflects competent, credible evidence for the trial court to find that an award of permanent custody is in the best interest of the children. Specifically, mother has failed to complete significant portions of her case plan, including attending personal, as well as her children's, counseling sessions and failing to take drug screens. Monica Tinsley, mother's case worker, testified that mother has made little improvement in her parenting or anger management over the course of this case and displays little inclination to do so. This testimony is competent and credible evidence to support the trial court's conclusion that mother "is without ability, commitment, discipline or compassion" to provide a secure placement for her children.

{¶ 22} Additionally, the children's guardian ad litem recommended the grant of permanent custody to FCCS due to concerns he had about mother's ability to parent and provide for all of her children. The guardian expressed concern about mother having to parent more than one child because she lacked the parental skills necessary to handle multiple children at one time. Further, the children had been in foster care and not in their mother's care for a lengthy period of time. The evidence of bonding between mother and children and among the children themselves was mixed at best, as was evidence of the wishes of the children. Lastly, mother's concern about the children's potential future placements in foster homes is pure speculation.

{¶ 23} The award of permanent custody to FCCS is supported by competent, credible evidence. Accordingly, we overrule mother's second assignment of error.

## III. Conclusion

{¶ 24} Having overruled mother's two assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgments affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.