[Cite as *In re Lu.M-R.*, 2022-Ohio-4779.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| | | No. 21AP-681 |
| [Lu.M-R.] et al., | : | (C.P.C. No. 20JU-9670) |
| [R.R., Mother, | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on December 29, 2022

**On brief:** *Kidd & Urling LLC*, and *Thomas W. Kidd, Jr.* for appellant. **Argued:** *Thomas W. Kidd.*

**On brief:** *Robert J. McClaren* for appellee Franklin County Children Services. **Argued:** *Erin Burton.*

**On brief:** Michelle Mumaw for appellee CASA Franklin County, Guardian ad Litem.

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations, Juvenile Branch

JAMISON, J.

{¶ 1} Appellant, R.R., appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting temporary custody of her minor children Lu.M-R. and Lo.M-R. to Franklin County Children Services ("FCCS"). For the following reasons, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2}   On March 28, 2019, Lu.M-R. and Lo.M-R. were removed from the home of R.R. and father, J.R., based on allegations of domestic violence committed by J.R.[1]   A complaint alleging one count of dependency pursuant to R.C. 2151.04(C) was filed and on March 29, 2019, the juvenile court granted temporary custody of the children to FCCS until an adjudicatory hearing could be held on the complaint.   On June 26, 2019, the case was dismissed and refiled under case No. 19JU-7473, and temporary custody was again awarded to FCCS.   The matter was subsequently dismissed and refiled four additional times, culminating in case No. 20JU-9670 filed on January 4, 2021.   FCCS received an order of temporary custody with each refiling.

{¶ 3}   The adjudication hearing began on February 22, 2021, and spanned several days of testimony, concluding on March 22, 2021.   A dispositional hearing was held on March 23, 2021.   In a decision filed on April 19, 2021, Lu.M-R. and Lo.M-R. were found to be dependent, and temporary custody was granted to FCCS.   Critical to this appeal, the court also retroactively granted first and second extensions of temporary custody and adopted a case plan.

{¶ 4}   On March 23, 2021, FCCS filed a motion for permanent custody, and filed an amended motion for permanent custody on April 22, 2021.   The matter has not been heard.

{¶ 5}   R.R. filed objections to the magistrate's decision challenging the retroactive extensions of temporary custody only; she did not challenge the adjudication of temporary custody to FCCS.   On November 23, 2021, the objections were overruled.

{¶ 6}   On December 17, 2021, R.R. filed this appeal.   J.R. has not appealed from the trial court's ruling.

## II.  ASSIGNMENTS OF ERROR

{¶ 7}   Appellant assigns the following as trial court error:

> [1.] By retroactively granting temporary custody orders, the Magistrate deviated from the carefully-calibrated process crafted by the General Assembly.
>
> [2.] The Magistrate's retroactive temporary custody orders deprived [R.R.] of her rights as a parent, in violation of state law and the Fourteenth Amendment.

---

[1] R.R. and J.R. are the parents of Lu.M-R. and Lo.M-R., and J.R. is the father of four other children in the household. All six children were removed from the home, and the other children have cases not relevant to this appeal.

### III. STANDARD OF REVIEW

{¶ 8} A trial court's decision of a motion to extend temporary custody is reviewed for an abuse of discretion. *In re E.T.*, 9th Dist. No. 22720, 2005-Ohio-6087, ¶ 9.

{¶ 9} "Appellate courts 'generally review a trial court's adoption, denial or modification of a magistrate's decision for an abuse of discretion.' " *In re L.C.C.*, 10th Dist. No. 18AP-167, 2018-Ohio-4617, ¶ 15, citing *Brunetto v. Curtis*, 10th Dist. No. 10AP-799, 2011-Ohio-1610, ¶ 10. "This is also, more specifically, the standard of review for a juvenile court's decision for temporary custody." *In re B.J.*, 9th Dist. No. 104800, 2017-Ohio-315, ¶ 15 .

{¶ 10} R.R.'s appeal only addresses legal issues and does not challenge the weight or sufficiency of the evidence. Where the appeal presents only a question of law, the standard of review is de novo. *In re T.A.*, 9th Dist. No. 19CA0025-M, 2020-Ohio-3613, ¶ 8. As the underlying matter in this case involves whether the trial court may issue retroactive orders, the standard of review is de novo.

### IV. LEGAL ANALYSIS

{¶ 11} Because the assignments of error are related, I shall address them together.

{¶ 12} Pursuant to R.C. 2151.415(D)(4), children may be held in temporary custody for a maximum of two years. R.R. contends that the two-year timeline begins on the award of temporary custody at disposition, and by granting retroactive extensions she is deprived of the two-year period to reunify with her children.

{¶ 13} "Temporary custody is a status created by statute to provide interim care for Ohio children alleged to be * * * dependent." *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, ¶ 8. R.C. 2151.413(D)(1) defines temporary custody for purposes of the two-year timeline as beginning the earlier of the date the child is adjudicated or 60-days after the child is removed from the home.

{¶ 14} A juvenile court is empowered by R.C. Chapter 2151 to make grants of temporary custody. *In re K.M.P.*, 8th Dist. No. 110569, 2022-Ohio-466. "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 14. A juvenile court therefore had the authority to place a child into the temporary custody of FCCS.

{¶ 15} Juv.R. 13 empowers the juvenile court to "make such temporary orders concerning the custody of care of a child who is the subject of the complaint as the child's interest and welfare may require." The rule requires a probable cause hearing within 72 hours, but is silent on the duration of the temporary order. *O'Conner v. Stires*, 12th Dist. No. CA2017-04-008, 2017-Ohio-8929, ¶ 11.

{¶ 16} There is a temporary custody sunset provision that prohibits a period of temporary custody in excess of two years. R.C. 2151.415(D)(4) reads, "[n]o court shall grant an agency more than two extensions of temporary custody pursuant to division (D) of this section and the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section." "Shelter care" is defined as "the temporary care of the children in physically unrestricted facilities, pending court adjudication or disposition." Juv.R. 2(MM). FCCS may have temporary custody of the children for a maximum period of two years. *In re Omosun Children*, 106 Ohio App.3d 813, 819 (1995).

{¶ 17} R.C. 2151.353(G) provides that a temporary order of custody issued at disposition terminates "one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care." The temporary order of custody was issued on March 23, 2021 terminates one year after the children were placed in shelter care. That date had already passed. Likewise, the time to request to extend the temporary order had also lapsed, so the retroactive extensions were necessary to maintain temporary custody, which is not contested in this appeal. FCCS made an oral motion for retroactive extensions at disposition. There were no objections to the motion and it was granted. The trial court found that the extensions were in the best interest of the children. Because the children had been in the temporary custody for almost two years at the time of the dispositional order, no further extensions are permitted.

{¶ 18} R.C. 2151.417(C)(2) requires a review hearing one year after the children were placed in shelter care, and then a "similar review hearing no later than every twelve months after the initial review hearing." The court did not conduct the initial hearing, but did set the second annual review within the two-year window.

{¶ 19} R.C. 2151.35(B)(1) mandates that a dispositional hearing be conducted within 90-days after the complaint has been filed or the complaint shall be dismissed without prejudice. The juvenile court, therefore, retains jurisdiction to take up the refiled complaint. *Howard v. Catholic Social Serv. Of Cuyahoga Cty., Inc.*, 70 Ohio St.3d 141, 144 (1994). When a matter has had multiple dismiss-refile situations, the temporary custody time limits ran continuously from the date the child was first taken into emergency custody. *In re Beeman*, 11th Dist. No. 95-L-023, 1996 Ohio App. LEXIS 3477 (Aug. 16, 1996).

{¶ 20} However, because temporary custody was awarded to FCCS at each refiling, FCCS maintained custody continuously from the date of removal until disposition, at which time FCCS was again awarded temporary custody. I believe the refilings of the complaint was necessary under the circumstances and not a means of extending temporary custody beyond the two-year limit.

{¶ 21} A case plan with a goal of reunification was prepared, but was not approved and adopted by the court until disposition in March 2021. The parents and children have been linked to services since March 2019. R.R. is required to complete a mental health assessment, a psychological evaluation, a psychological assessment, a DV assessment, and to participate in family counseling and parenting classes. The case plan also requires R.R. to not administer any physical discipline to the children and to provide accurate and honest information. R.R.'s counsel indicated that some of the requirements had been completed and that R.R. is "seeking to comply as quickly as possible." (Mar. 23, 2021 Tr. at 12.)

{¶ 22} The record sheds no light on how R.R.'s ability to work towards reunification predisposition was frustrated. R.R. attended review meetings, but refused to participate in services or communicate with the caseworker or the guardian. (Tr. at 26.) R.R. has been actively participating since disposition in March 2021 and visits with the children regularly.

{¶ 23} The children were removed on March 28, 2019. Predisposition temporary custody was awarded to FCCS at a preliminary hearing on March 29, 2019, and FCCS maintained continuous temporary custody through several dismiss and refilings until the matter was adjudicated and disposed. R.R.'s arguments totally ignore the children have already been in the temporary custody of FCCS for two years, and the court has no authority to issue another order of temporary custody to extend past the two-year maximum.

{¶ 24} R.R. seems to contend that permanent custody can only be granted after a child has been in the temporary custody of FCCS for 12 months in a consecutive 22-month period. However, R.C. 2151.414(B) lists four alternatives, and any single alternative can independently support a finding of permanent custody.

{¶ 25} While this court recognizes that suitable parents always have a paramount right to the custody of their children and that termination of parental rights "is the family law equivalent of the death penalty in a criminal case," this is not a permanent custody matter. *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). The award of temporary custody is "not as drastic a remedy as permanent custody." *In re L.D.,* 10th Dist. No. 12AP-985, 2013-Ohio-3214, ¶ 7. Because a granting of temporary custody does not divest parents of their fundamental parental rights, the parent can continue to fight for their children. *Id.*

{¶ 26} R.C. 2151.415 governs the procedure FCCS must follow after the grant of temporary custody at disposition, and offers six possible disposition alternatives. However, FCCS "shall file a motion requesting permanent custody of the child" when a child has been in FCCS temporary custody for 12 or more months of a consecutive 22-month period. R.C. 2151.413(D)(1). "An agency with temporary custody is not required to seek permanent custody, *In re Murray,* 52 Ohio St.3d at 158, 556 N.E.2d 1169, unless it is statutorily required to do so." *In re Adams* at ¶ 44. When the 12 of 22 threshold has been met, FCCS must seek permanent custody. *In re Thompson*, 10th Dist. No. 00AP-1358, 2001 Ohio App. LEXIS 1890, 20 (Apr. 26, 2001). For purposes of the R.C. 2151.413(D)(1) timelines, there is no difference in predisposition temporary custody and a granting of temporary custody at disposition. There are no options to continue temporary custody or some other disposition.

{¶ 27} FCCS filed a motion for permanent custody. R.R. argues that the 22-month period outlined in R.C. 2151.413(D)(1) began to run on March 23, 2021. That argument is more properly a subject for the permanent custody trial. Before a juvenile court may terminate parental rights and award FCCS permanent custody, it must find that permanent custody to FCCS is in the best interest of the children and one of the statutory factors have been met. R.C. 2151.414(B)(1).

{¶ 28} It is noteworthy that R.R.'s appeal does not challenge the award of temporary custody to FCCS. R.R.'s counsel stated during the dispositional hearing that "we're

obviously not contesting custody - - - temporary custody to the agency." (Tr. at 10.) Even a successful appeal will not impact the custodial arrangements for the children. The passing of the two-year statutory time period set forth in R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders. *In re A.J.*, 10th Dist. No. 13AP-864, 2014-Ohio-2734, ¶ 10. The children will not simply be automatically returned to a parent when the two-year period expires. *Id.*

{¶ 29} R.R. is not attempting to have her children returned to her immediately, but argues that the 22-month lookback period starts in March 2021, and that FCCS is foreclosed from filing a permanent custody motion until January 2023. While R.R. contends that the children must have been in temporary custody pursuant to R.C. 2151.353(A)(2) for at least 22-months, I find no language in either the statutes or case law to support that position.

{¶ 30} The " '12 of 22' provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child." *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 22. A parent is provided with "12 months to work toward reunification before an agency can institute a permanent custody action asserting R.C. 2151.414(B)(1)(d) grounds." *Id.* Those 12 months have lapsed.

{¶ 31} Because R.R. requests more time to reunify, I find there is no additional time permitted under the statutes, and cannot sustain her argument.

## V. CONCLUSION

{¶ 32} Because the evidence in the record supports the trial court's judgment, R.R.'s first, and second assignments of error are overruled. The decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.

*Judgment affirmed.*

KLATT, J., concurring in judgment only.
McGRATH, J., concurring in judgment only.

————————————