[Cite as *In re L.T.*, 2023-Ohio-4329.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| [L.T., | : | No. 23AP-26 |
| C.P., Mother, | : | (C.P.C. No. 17JU-14741) |
| Appellant]. | : | (REGULAR CALENDAR) |
| In the Matter of: | : | |
| [E.T., | : | No. 23AP-28 |
| C.P., Mother, | : | (C.P.C. No. 19JU-14516) |
| Appellant]. | : | (REGULAR CALENDAR) |
| In the Matter of: | : | |
| [E.T., | : | No. 23AP-67 |
| J.T., Father, | : | (C.P.C. No. 19JU-14516) |
| Appellant]. | : | (REGULAR CALENDAR) |
| In the Matter of: | : | |
| [L.T., | : | No. 23AP-68 |
| J.T., Father, | : | (C.P.C. No. 17JU-14741) |
| Appellant]. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on November 30, 2023

**On brief:** *William T. Cramer*, for appellant C.P.

**On brief:** *Christopher Bazeley*, for appellant J.T.

**On brief:** *Serena M. Coppula*, and *Robert J. McClaren*, for Franklin County Children Services.

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1}  Appellant, C.P., mother of L.T. and E.T. ("mother"), and appellant, J.T., father of L.T. and E.T. ("father"), appeal from the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, placing L.T. and E.T. in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2}  L.T. was born in February 2017, and two months later he was placed in the temporary custody of FCCS.  E.T. was born in April 2019, and she was immediately placed in the temporary custody of FCCS.

{¶ 3}  In March 2019, FCCS moved for permanent custody of L.T., and in April 2020, FCCS moved for permanent custody of E.T.  The trial on these motions began in early 2022.  Testimony was heard on eight different trial dates, occurring in January, May, August, and September 2022. The following individuals testified at trial:  Debbie Adediran, an FCCS caseworker; Dona Arnold, an FCCS caseworker supervisor; Michael Lerner, the guardian ad litem ("GAL") for the children; and mother.

{¶ 4}  Adediran, who was assigned as the caseworker for this matter in June 2021, testified as follows.  Because of the biological paternity uncertainty as to L.T., father was encouraged to obtain DNA testing with the child support agency, but he did not complete that testing.  Nor did father participate in any efforts toward reunification.  Mother, however, did make some effort toward reunification.  Her case plan required her to do, among other things, a psychological assessment, follow the recommended counseling, drug testing, and parenting classes.  Mother did not follow the counseling recommendations, she was non-compliant with the drug testing requirement, and while she completed parenting classes, she did not demonstrate practical application of the lessons taught in those classes. When mother did the drug testing, the results were positive for illegal drugs.  Mother

missed a significant number of agency scheduled visits with the children, including not attending any scheduled visits from mid-October 2021 until March 2022. At the visits mother did attend, she appropriately interacted with her children, but Adediran did not observe any notable bonding.

{¶ 5} Adediran further testified that E.T. had been in her current foster placement from the age of 2 months until trial, and she demonstrated a strong bond with her foster mother and the child in that home. L.T. had been in his current foster placement for 36 months prior to trial. He also demonstrated a strong bond with his caregivers, and he gets along with the 3 children in that home. L.T. has special needs, which require speech, occupational, and physical therapy. Although E.T. and L.T. were not placed with the same foster parents, the 2 foster families have demonstrated a bond with each other.

{¶ 6} Mother testified as follows. J.T. is the father to E.T. but not L.T., who was fathered by a "human trafficker." (Aug. 23, 2022 Tr. at 62.) Mother acknowledged that she had been the victim of domestic violence during multiple relationships, including with father. The classes she attended did not curb her from being a repeated victim of domestic violence. Mother admitted to using crack cocaine and marijuana. She used marijuana to help her appetite, but she stopped using it in approximately June 2022. She also explained that she used crack once soon after E.T. was taken from her because she was depressed. She believes she has a bond with her children.

{¶ 7} Arnold testified she was the caseworker assigned to this matter from approximately September 2018 until May 2021. Mother completed approximately 25 to 30 percent of her drug screens, and she attended approximately 45 to 50 percent of the scheduled visits with her children. During visits, Arnold observed appropriate behavior from mother, but she did not view mother as being bonded with the children. Father was not observed with the children because he never attended a visit. Arnold considered E.T. to be bonded to her foster mother, and L.T. was bonded with his foster parents. During Arnold's involvement with the matter, mother's victimization in domestic relationships was an ongoing issue. Mother had indicated to Arnold that J.T. was the father of both children.

{¶ 8} Lerner testified that he was appointed as the GAL for each child from the start of the cases. Father stopped participating in L.T.'s case since approximately 2018, and he never participated in E.T.'s case. Lerner expressed no concern with E.T.'s foster placement,

and he noted she is bonded with her foster mother. Similarly, he had no concern with L.T.'s placement, and he observed L.T.'s bond with the foster mother and father. He did not observe a similar bond between mother and E.T. or L.T. Lerner also remained very concerned with safety issues relating to mother's drug use and her inability to separate herself from a cycle of entering relationships with domestic violence offenders. Because of their young age, neither child was capable of expressing their custody wishes. Based on his evaluation of the circumstances, Lerner opined that the granting of FCCS's motions for permanent custody would be in the children's best interest.

{¶ 9} Following the trial on FCCS's motions for permanent custody, the trial court issued a written decision granting the motions and committing L.T. and E.T. to the permanent custody of FCCS for the purpose of adoption.

{¶ 10} Mother and father timely appeal.

## II. Assignments of Error

{¶ 11} Mother assigns the following sole assignment of error for our review:

> The weight of the evidence does not support a grant of permanent custody to the agency.

{¶ 12} Father assigns the following sole assignment of error for our review:

> The juvenile court abused its discretion when it denied [Father's] motion to compel another party to appear for cross-examination.

## III. Discussion

{¶ 13} Mother's sole assignment of error alleges the trial court's decision to grant permanent custody of L.T. and E.T. to FCCS was against the manifest weight of the evidence. Father's sole assignment of error contends the trial court abused its discretion in denying his motion to compel another party to appear for cross-examination. These assignments of error lack merit.

{¶ 14} We first address mother's allegation that the trial court's granting of FCCS's request for permanent custody of the children was against the manifest weight of the evidence. "In reviewing a judgment granting permanent custody to FCCS, an appellate court 'must make every reasonable presumption in favor of the judgment and the trial court's findings of facts.' " *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8,

quoting *In re P.G.*, 10th Dist. No. 11AP-574, 2012-Ohio-469, ¶ 37. " '[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.' " *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59, quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). Therefore, "[j]udgments are not against the manifest weight of the evidence when all material elements are supported by competent, credible evidence." *J.T.* at ¶ 8.

{¶ 15} "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio recognizes the essential and basic rights of a parent to raise his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). However, these rights are not absolute, and a parent's natural rights are subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interest of the child. *H.D.* at ¶ 10, citing *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00 CA 2694, 2000 Ohio App. LEXIS 4550 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist.1994); R.C. 2151.414(B).

{¶ 16} In deciding to award permanent custody pursuant to R.C. 2151.414(B)(1), the trial court must take a two-step approach. *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 18. The court must first determine if any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* The first factor described in R.C. 2151.414(B)(1) applies when "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a). And the fourth factor described in R.C. 2151.414(B)(1) applies when "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period." R.C. 2151.414(B)(1)(d). Here, as to L.T., there is no dispute the trial court correctly found the statutory factor in R.C. 2151.414(B)(1)(d) was established. Nor does either parent challenge the trial court's finding, as to both children, that the statutory factor in R.C.

2151.414(B)(1)(a) was established. Therefore, it is uncontested the first part of the two-part permanent custody test was established as to both children.

{¶ 17} Once the trial court determines that one of the circumstances in R.C. 2151.414(B)(1) applies, it must then determine whether "clear and convincing" evidence demonstrates that a grant of permanent custody is in the child's best interest. *In re A.J.*, 10th Dist. No. 13AP-864, 2014-Ohio-2734, ¶ 16; R.C. 2151.414(B)(1). "Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established." *K.L.* at ¶ 14. "It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt." *Id.* Here, the trial court found that granting permanent custody to FCCS was in each child's best interest. Mother argues the weight of the evidence did not support this finding.

{¶ 18} In determining the best interest of a child, R.C. 2151.414(D)(1) requires the trial court to consider all relevant factors including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in [R.C. 2151.414(E)(7) to (11)] apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a) through (e). R.C. 2151.414(D) does not give any one factor "greater weight than the others." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

{¶ 19} The evidence at trial supported the trial court's determination that granting permanent custody to FCCS was in L.T.'s and E.T.'s best interest. In evaluating this issue, R.C. 2151.414(D)(1)(a) required the trial court to consider the interactions and relationships between the child and the individuals in the child's life, including the child's parents, siblings, relatives, and "any other person who may significantly affect the child." Here, evidence demonstrated a strong bond between E.T. and her foster mother, and between L.T. and his foster parents. E.T. also bonded with the child in her foster home, and L.T. got along well with the three other children in his foster home. No one observed father's interactions with the children because he did not participate. During agency scheduled visits, mother behaved appropriately, but neither the caseworkers nor the GAL observed bonding between her and the children.

{¶ 20} R.C. 2151.414(D)(1)(b) required the trial court to consider the wishes of L.T. and E.T., expressed either directly by each child or through the child's GAL. Because of their young age and lack of maturity, these children could not express their custody wishes. The GAL for both children expressed great concern for the children's safety if they would be reunited with mother. She failed to abide by drug testing requirements, and she demonstrated an inability to not enter abusive relationships. The GAL opined that, based on these circumstances, along with the children's strong bonds with their foster families, and L.T.'s special needs, it is in their best interest for FCCS's permanent custody motions to be granted.

{¶ 21} R.C. 2151.414(D)(1)(c) required the trial court to consider the custodial history of each child. For the purpose of this division, L.T. entered the temporary custody of FCCS within months of his birth in 2017, and he has been in the continuous custody of FCCS since that time. E.T. also entered the temporary custody of FCCS soon after her birth in April 2019, and has been in FCCS's continuous custody since that time. *See* R.C. 2151.414(D) ("For the purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days

after the removal of the child from home."). Thus, at the time of trial, L.T. and E.T. had been in the care of FCCS for multiple years.

{¶ 22} R.C. 2151.414(D)(1)(d) addresses each child's need for legally secure permanent placement and required the trial court to consider whether this can be achieved without a grant of permanent custody to the agency. *In re D.P.*, 10th Dist. No. 06AP-780, 2007-Ohio-1703, ¶ 16. Here, the trial court concluded that a legally secure permanent placement could not be achieved without a grant of permanent custody to FCCS. The evidence supported this conclusion. The evidence demonstrated that father wholly failed to participate in the process of working toward reunification. And while mother made some effort toward meeting the case plan, the evidence ultimately demonstrated she cannot provide a safe, secure, and permanent home for the children. Mother conceded she was unable to stop repeatedly entering abusive relationships, and the evidence demonstrated her unwillingness to cease illegal drug use. She was also inconsistent in attending her visits with the children, at least once going months without attending the visits. Considering L.T.'s special needs, and the many appointments necessary to address those needs, the trial court reasonably found mother's lack of consistency to be especially problematic. The trial court also noted that both foster homes have indicated an intent to pursue adoption of the children. Under these circumstances, the trial court reasonably concluded that a legally secure permanent placement cannot be achieved without a grant of permanent custody to FCCS.

{¶ 23} Lastly, under R.C. 2151.414(D)(1)(e), the trial court was required to consider any applicable factors set forth in R.C. 2151.414(E)(7) through (11). In reviewing the children's best interest and these factors, the trial court found no factor applied. However, in reviewing the applicability of one or more of the circumstances set forth in R.C. 2151.414(B)(1), the trial court separately found both father and mother had legally abandoned the children for the purpose of R.C. 2151.414(E)(10), the factor addressing parental abandonment. R.C. 2151.011(C) provides that "[f]or purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." A parent's intent is not pertinent when determining abandonment for the purpose of R.C. 2151.414(E)(10). *In*

*re E.B.*, 10th Dist. No. 16AP-352, 2017-Ohio-2672, ¶ 44. Evidence at trial demonstrated that father had no contact with L.T. after 2018, and never had contact with E.T. Evidence at trial also demonstrated that, at least once, mother went more than 90 days without visiting the children. Thus, despite the trial court not expressly taking this factor into consideration in determining the children's best interest, this finding under R.C. 2151.414(E)(10) was supported in the record.

{¶ 24} Based on our review of the record, we find competent, credible evidence supported the trial court's conclusion that granting permanent custody to FCCS was in each child's best interest. Because the trial court's decision to grant permanent custody of L.T. and E.T. to FCCS was not against the manifest weight of the evidence, we overrule mother's sole assignment of error.

{¶ 25} In father's sole assignment of error, he alleges the trial court erred in denying his request to compel a party, namely mother, to appear for cross-examination. He argues this denial violated his right under R.C. 2317.07 to cross-examine her as an adverse party. This assignment of error is not well-taken.

{¶ 26} R.C. 2317.07 states: "At the instance of the adverse party, a party may be examined as if under cross-examination, orally, by way of deposition, like any other witness, by way of written interrogatories filed in the action or proceeding, or by any one or more of such methods. The party calling for such examination shall not thereby be concluded but may rebut it by evidence." An "adverse party" is commonly defined as "[a] party whose interests are opposed to the interests of another party to the action." *Black's Law Dictionary* 1154 (8th Ed.2004). Thus, a party has a right to cross-examine an adverse party. *Norton v. Popper*, 10th Dist. No. 89AP-906, 1990 Ohio App. LEXIS 2563 (June 19, 1990). A trial court has discretion in deciding whether to compel testimony; thus, such a decision is reviewed for abuse of discretion. *Ohio v. Verbanac*, 8th Dist. No. 111427, 2022-Ohio-3743, ¶ 23. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 27} At trial, father's counsel began, but did not complete, his cross-examination of mother. During this cross-examination, the trial court recessed for the day. When the trial resumed the next day, mother did not appear. Consequently, father's counsel requested the trial court compel mother to appear for further testimony. The trial court

denied the request. On appeal, father argues the continued cross-examination of mother was critical to his case because it would have clarified whether he was in fact the biological father of both L.T. and E.T. We are unpersuaded.

{¶ 28} J.T. is the identified putative father of E.T., and he signed an acknowledgment of paternity establishing himself as L.T.'s legal father. (FCCS Ex. 3, Acknowledgment of Paternity.) There was no dispute J.T. is E.T.'s biological father, and despite FCCS referring him for DNA testing, which would have eliminated the uncertainty regarding whether he is L.T.'s biological father, he never completed this testing. During FCCS's cross-examination of mother, she testified that J.T. is E.T.'s biological father, but not L.T.'s—she identified this other man as a "human trafficker." (Aug. 23, 2022 Tr. at 62.) Father's counsel also cross-examined mother regarding each child's biological father. During that questioning, mother reaffirmed her prior testimony that J.T. is E.T.'s biological father, but that L.T.'s biological father is the "human trafficker." (Sept. 19, 2022 Tr. at 109.) Father fails to explain how additional testimony from mother on this issue could have settled the biological paternity issue. And this argument is especially weak considering he declined to participate in DNA testing to determine if he is L.T.'s biological father. Consequently, we find the trial court did not abuse its discretion in denying father's request to compel mother to appear again for further cross-examination.

{¶ 29} Accordingly, we overrule father's sole assignment of error.

## IV. Disposition

{¶ 30} Having overruled mother's sole assignment of error and father's sole assignment of error, we affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgments affirmed.*

BOGGS and LELAND, JJ., concur.

———————————