[Cite as *In re J.R.*, 2024-Ohio-5619.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| [J.R., | : | No. 24AP-271 |
| | | (C.P.C. No. 22JU-10953) |
| T.S., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on November 26, 2024

**On brief:** *William T. Cramer*, for appellant.

**On brief:** *Robert J. McClaren*, and *Sharon K. Carney*, for
Franklin County Children Services.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Appellant, T.S., mother of J.R., appeals from a judgment of the Franklin
County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch,
placing J.R. in the permanent custody of appellee, Franklin County Children Services
("FCCS"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} J.R. was born in August 2022. Eleven days after J.R.'s birth, he was placed
in the custody and care of FCCS, where he has remained. On June 17, 2023, FCCS moved
for permanent custody of J.R., alleging the child cannot or should not be placed with either
parent within a reasonable time and that permanent custody was in the child's best interest.
The permanent custody trial was continued multiple times, and ultimately the trial was held
on March 7, 2024. On the day of trial, mother did not appear, but her counsel was present.

Her counsel requested a continuance based on mother's absence. The trial court denied this request, and the trial proceeded as scheduled on that date. Following the testimony of the FCCS caseworker assigned to the case and the guardian ad litem ("GAL") for the child, the trial court indicated from the bench that it would grant FCCS's request for permanent custody. On March 20, 2024, the trial court entered judgment granting FCCS's motion and committing J.R. to the permanent custody of FCCS for the purpose of adoption.

{¶ 3} Mother timely appeals.

## II. Assignments of Error

{¶ 4} Mother assigns the following two assignments of error for our review:

> [I.] Appellant's Due Process rights were violated by the denial of a continuance to allow appellant to attend the permanent custody trial.

> [II.] The juvenile court violated R.C. 2151.414 by issuing a brief, vague permanent custody entry that failed to demonstrate that the court properly considered the best interest factors.

## III. Discussion

{¶ 5} Mother's first assignment of error contends the trial court erred in denying her counsel's request for a continuance of the permanent custody trial. She argues her absence on the day of trial weighed in favor of granting the continuance. This assignment of error is not well-taken.

{¶ 6} An appellate court will not reverse a denial of a continuance in a permanent custody case absent an abuse of discretion. *In re J.B.*, 10th Dist. No. 08AP-1108, 2009-Ohio-3083, ¶ 26, citing *In re B.G.W.*, 10th Dist. No. 08AP-181, 2008-Ohio-3693, ¶ 23. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 173 Ohio St.3d 191, 2023-Ohio-1823, ¶ 27. In reviewing whether a trial court abused its discretion in denying a continuance, an appellate court weighs any potential prejudice to the movant against the court's right to control its docket and the public's interest in the efficient dispatch of justice. *State v. Woods*, 10th Dist. No. 09AP-667, 2010-Ohio-1586, ¶ 24; *In re M.K.*, 10th Dist. No. 09AP-1141, 2010-Ohio-2194, ¶ 14. Ultimately, " '[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate

due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *J.B.* at ¶ 26, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

{¶ 7} In evaluating a continuance request, a court considers: (1) the length of the requested delay; (2) whether the parties have requested and received other continuances; (3) the inconvenience to the parties, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or is merely dilatory, purposeful, or contrived; (5) whether the movant contributed to the circumstances giving rise to the request for a continuance; and (6) any other relevant factors, depending on the unique circumstances of each case. *Woods* at ¶ 24, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981); *J.B.* at ¶ 26.

{¶ 8} Based on the circumstances here, we find the trial court did not abuse its discretion in denying mother's request for a continuance on the day of trial. When mother failed to appear for trial on March 7, 2024, her counsel stated she had been unable to contact mother since October 23, 2023. Consequently, no explanation was given for mother's absence. *See In re A.P.,* 10th Dist. No. 08AP-186, 2009-Ohio-438, ¶ 5-6 (trial court did not abuse its discretion in denying request for continuance where the request is made the day of the hearing after parent failed to appear and counsel is unable to give a reason for the parent's absence or explain the parent's whereabouts). Further, pursuant to R.C. 2151.414(A)(2), the trial court is to hold the permanent custody hearing no later than 120 days after the agency files the permanent custody motion except for "good cause" shown for a reasonable continuance. By the time of the March 7, 2024 trial date, the permanent custody motion had been pending for more than 230 days. *See In re J.C.,* 10th Dist. No. 10AP-766, 2011-Ohio-715, ¶ 46 (a trial court does not abuse its discretion in denying a request for a continuance when the permanent custody hearing is already past the 120-day deadline contained in R.C. 2151.414(A)(2)). And, by the time of the permanent custody hearing, J.R. had been in FCCS's custody since shortly after his birth in August 2022, with the potential for adoptive placement with his current foster caregivers. *See In re J.M.,* 10th Dist. No. 15AP-234, 2015-Ohio-3988, ¶ 26 (a trial court may consider the children's length of time in foster care and potential for adoptive placement as a relevant factor in determining whether to grant or deny a continuance). Under these circumstances,

we find it was not an abuse of discretion for the trial court to deny mother's request for a continuance of the trial.

{¶ 9} Accordingly, we overrule mother's first assignment of error.

{¶ 10} In mother's second assignment of error, she alleges the trial court erred in awarding permanent custody to FCCS because its judgment entry does not reflect the necessary consideration of the statutory factors a court must weigh in determining whether an award of permanent custody is in the child's best interest. We are unpersuaded.

{¶ 11} "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio recognizes the essential and basic rights of a parent to raise his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). However, these rights are not absolute, and a parent's natural rights are subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interest of the child. *H.D.* at ¶ 10, citing *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00 CA 2694, 2000 Ohio App. LEXIS 4550 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist.1994).

{¶ 12} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency such as FCCS. In deciding to award permanent custody, the trial court must take a two-step approach. *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 18. The court first must determine if any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* As pertinent here, the first factor concerns whether the child cannot or should not be placed with either parent within a reasonable time. *See* R.C. 2151.414(B)(1)(a).

{¶ 13} Once a trial court determines that one of the circumstances in R.C. 2151.414(B)(1) applies, it must then determine whether "clear and convincing" evidence demonstrates that a grant of permanent custody is in the child's best interest. *In re A.J.*, 10th Dist. No. 13AP-864, 2014-Ohio-2734, ¶ 16; R.C. 2151.414(B)(1). "Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief

or conviction as to the facts to be established." *K.L.* at ¶ 14. "It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt." *Id.*

{¶ 14} In determining the best interest of a child, R.C. 2151.414(D)(1) requires the trial court to consider all relevant factors including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in [R.C. 2151.414(E)(7) to (11)] apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a) through (e). R.C. 2151.414(D) does not give any one factor "greater weight than the others." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

{¶ 15} On appeal, we will not reverse a trial court's best interest finding in a permanent custody case unless it is against the manifest weight of the evidence. *In re I.R.*, 10th Dist. No. 04AP-1296, 2005-Ohio-6622, ¶ 4, citing *In re Andy-Jones*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28. Judgments in permanent custody proceedings are not against the manifest weight of the evidence "when all material elements are supported by competent, credible evidence." *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8.

{¶ 16} Here, the trial court found that J.R. cannot or should not be placed with either parent within a reasonable time. The trial court also found, based on its review of all relevant factors, that granting FCCS's request for permanent custody of J.R. was in this child's best interest. Mother does not allege these findings were against the manifest weight of the evidence. Instead, she alleges that the trial court did not sufficiently demonstrate its consideration of all the pertinent factors in determining the best interest of the child. We disagree.

{¶ 17} Although "[a] trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision * * * there must be some indication on the record that all of the necessary factors were considered." (Citations omitted.) *In re C.C.*, 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 53. If the record fails to demonstrate the trial court considered all of the R.C. 2151.414(D) factors in determining the best interest of the child, this court must reverse and remand for a more complete assessment. *See In re T.W.*, 10th Dist. No. 19AP-700, 2020-Ohio-4712, ¶ 14 (reversing trial court award of permanent custody because there was "no way for us to be certain that the trial court[] * * * correctly analyzed the evidence in light of the statutory best interest factors"). Based on our review of the record in this matter, however, we find the record demonstrates the trial court's consideration of those factors in making the best interest determination.

{¶ 18} At trial, two witnesses testified—the caseworker assigned to the case and the GAL. Caseworker Ericka Simmons was assigned to the case in July 2023, and she testified to the following facts. Upon discharge from the hospital after his birth, J.R. was immediately placed in FCCS's custody because of mother's domestic violence, mental health, and drug issues. Since the child's removal shortly after his birth, he has continuously been in FCCS's custody because the agency could not place him back with either parent. Mother's case plan required her to do domestic violence and mental health assessments, drug screenings, and maintain stable income and housing. Mother maintained housing, but she made no progress on any other aspect of her case plan. Father was completely uninvolved with J.R., having no contact with the child or FCCS after his birth. At one time, the paternal grandmother came forward to possibly take custody of J.R., but she failed to follow through. Every other week, mother had one or two-hour visits with J.R. at the agency, with the last successful visit in June 2023. In February 2024, mother

arrived at the agency for a visit, but due to a miscommunication between the agency and the foster parents, J.R. was not brought to the agency. Although Simmons did not observe any visits, the agency logs indicate the visits were loving and mother showed affection toward J.R. Simmons observed a strong bond between J.R. and his foster parents, and with his older sister, who is also in their home. In Simmons' opinion, granting FCCS's motion is necessary to meet J.R.'s need for a legally secure and permanent placement.

{¶ 19} Stefanie Coe, the GAL for J.R., testified that her involvement with mother and her children began in 2020. J.R. is the youngest of mother's eight children. Coe was unable to observe any interaction between mother and J.R., and Coe noted that mother failed to avail herself of any case plan services during Coe's involvement in the case. Considering J.R.'s age, he is unable to express any custody wishes. Like the caseworker, Coe observed a very strong bond between J.R. and his foster parents, and between J.R. and his older sister who resides with him. Coe recommended the trial court grant FCCS's permanent custody motion. In summarizing the reasons granting the motion would be in J.R.'s best interest, Coe noted J.R. had been in foster care since his birth (19 months as of the trial date), and that additional time would not resolve any of the issues in the matter because of mother's consistent refusal to engage in agency services to work toward reunification. Mother insisted she needed no assistance despite the requirements of the case plan.

{¶ 20} After the presentation of evidence, the trial court indicated from the bench that FCCS's motion would be granted, stating in part that the "factors were met, and * * * outlined * * * effectively." (Mar. 7, 2024 Tr. at 61.) The trial court subsequently issued a written decision echoing these findings made from the bench. The decision sets forth the trial court's conclusion that "factors were met and outlined pretty effectively," demonstrating by clear and convincing evidence that "permanent custody is in the minor's best interest." (Mar. 20, 2024 Jgmt. Entry at 2.) This aligns with the uncontroverted evidence relevant to J.R.'s best interest—outlined in the testimony of the caseworker and GAL for the child—that J.R. had been in foster care since his birth, that father had no involvement in the matter, that mother had engaged in none of the agency's services designed to alleviate issues preventing reunification, that J.R. had developed strong bonds with his foster parents and with his older sister residing with him, and that only granting FCCS's motion would provide a legally secure permanent placement for J.R. We recognize

the trial court's decision granting FCCS's permanent custody motion does not individually analyze the factors pertinent to considering the child's best interest and does not provide as robust an analysis as is often seen in permanent custody decisions. However, the trial court's written decision, along with its comments made immediately after the presentation of the evidence at trial which weighed heavily in favor of an award of permanent custody to FCCS, reflect the trial court's consideration of those factors, and its corresponding finding that FCCS met its burden in support of its motion.

{¶ 21} For these reasons, we overrule mother's second assignment of error.

## IV. Disposition

{¶ 22} Having overruled both of mother's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

MENTEL, P.J., and EDELSTEIN, J., concur.

———————————————